IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HEIL TRAILER INTERNATIONAL, CO., a Delaware Company, | ) ) ) | |
| Plaintiff | ) ) | NO. 4:12-CV-00385 |
| vs. | ) ) | |
| GAVIN KULA, a Texas citizen, JERRY DAVIS, a Texas citizen, ROBERT TROXELL, a Texas citizen, WILLIAM LYMAN, a Texas citizen, and TROXELL COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## HEIL TRAILER INTERNATIONAL CO.'S APPLICATION FOR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF AND BRIEF IN SUPPORT

Terrence J. Sheahan *(pro hac vice motion pending)*
James W. Witz *(pro hac vice motion pending)*
Michael S. Mayer *(pro hac vice motion pending)*
FREEBORN & PETERS LLP
311 South Wacker, Suite 3000
Chicago, Illinois 60606
Ph: (312) 360-6000
Fax: (312) 360-6575

-and-

Jeremy W. Hawpe
State Bar No. 24046041
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, Texas 75201
Ph: (214) 880-8100
Fax: (214) 880-0181

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

PAGE

INTRODUCTION AND SUPPORTING FACTS ........................................................1

ARGUMENT.................................................................................................................6

A.   Standards for Injunctive Relief..............................................................6

B.   Plaintiff Has a Substantial Likelihood of Success on the Merits ...........7

    1.   Plaintiff Will Likely Succeed on Its Misappropriation of Trade Secrets Claims...............................................................7

    2.   Plaintiff Has a Likelihood of Success on Its Breach of Fiduciary Duty Claims............................................................13

    3.   Plaintiff Has a Likelihood to Prevail on Its CFAA and TTLA Claims........................................................................16

    4.   Plaintiff Has a Likelihood of Success on Its Conspiracy Claims..........................................................................17

C.   Plaintiff Will Be Irreparably Injured Without Relief ...........................19

D.   The Threatened and Likely Injury to Heil Outweighs Any Potential Injury to Defendants........................................................21

E.   Injunctive Relief Will Serve the Public Interest.................................22

CONCLUSION ..........................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Belo Corp. v. Corcoran,*
    52 S.W.3d 375 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ...................................... 18

*Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,*
    878 F.2d 806 (5th Cir. 1989) ........................................................................................... 7

*Am. Derringer v. Bond,*
    924 S.W.2d 773 (Tex. App.—Waco 1996, no writ) ...................................................... 8

*Am. Express Fin. Advisors, Inc. v. Scott,*
    955 F. Supp. 688 (N.D. Tex. 1996) .................................................................................. 21

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.,*
    223 S.W.3d 616 (Tex. App.—Fort Worth 2007, pet. denied) .......................................... 12

*Barnstormers, Inc. v. Wing Walkers, LLC,*
    No. EP-10-CV-261-KC, 2011 U.S. Dist. LEXIS 47143
    (W.D.Tex. May 3, 2011) ................................................................................................... 16

*Baty v. ProTech Ins. Agency,*
    63 S.W.3d 841 (Tex.App.—Houston [14th Dist.] 2001, pet. denied) .............................. 18

*Bourland v. State,*
    528 S.W.2d 350 (Tex. Civ. App.—Austin 1975, writ ref. n.r.e.) .................................... 18

*Butnaru v. Ford Motor Co.,*
    84 S.W.3d 198 (Tex. 2002) .............................................................................................. 19

*Central Sav. and Loan Ass'n v. Stemmons Nw. Bank, N.A.,*
    848 S.W.2d 232 (Tex. App.—Dallas 1992, no writ) ....................................................... 18

*Chapa v. Garcia,*
    848 S.W.2d 667 (Tex. 1992) ............................................................................................. 19

*Comp. Assoc. Int'l, Inc. v. Altai, Inc.,*
    918 S.W.2d 453 (Tex. 1994) .............................................................................................. 7

*Conley v. DSC Comms. Corp.,*
    1999 Tex. App. LEXIS 1321 (Tex. App.—Dallas Feb. 24, 1999, no writ) ...................... 20

*Equibrand Corp. v. Reinsman Equestrian Prods.,*
    2007 U.S. Dist. LEXIS 36229 (N.D. Tex. May 17, 2007) ................................................ 7

*Essex Crane Rental Corp. v. Carter,*
   2012 Tex. App. LEXIS 2512 (Tex. App. Houston 1st Dist. Mar. 29, 2012, no pet.)..............18

*Fiber Sys. Int'l, Inc. v. Roehrs,*
   470 F.3d 1150 (5th Cir. 2006) ...................................................................................16

*Floyd v. Hefner,*
   556 F. Supp. 2d 617 (S.D.Tex. 2008)........................................................................14

*FMC Corp. v. Varco International, Inc.,*
   677 F.2d 500 (5th Cir. 1982) ...................................................................................20

*Fox v. Tropical Warehouses, Inc.,*
   121 S.W.3d 853 ...........................................................................................12, 13, 19

*Gen'l Univ. Sys., Inc., v. HAL, Inc.,*
   379 F.3d 131 (5th Cir. 2004) ..................................................................................7, 8

*Gonzales v. Zamora,*
   791 S.W.2d 258 (Tex. App.—Corpus Christi 1990, no writ)...........................................12, 14

*IAC, Ltd. v. Bell Helicopter Textron, Inc.,*
   160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet.)..............................................19

*In re Bass,*
   113 S.W.3d 735 (Tex. 2003) ....................................................................................7, 8

*Juhl v. Airington,*
   936 S.W.2d 640 (Tex.1996) ....................................................................................18

*K&G Tool & Serv. Co. v. G&G Fishing Tool Service,*
   314 S.W.2d 782 (Tex. 1958) ...................................................................................20

*Lakedreams v. Taylor,*
   932 F.2d 1103 (5th Cir. 1991) ...................................................................................7

*Leonard v. State,*
   767 S.W.2d 171 (Tex. App.—Dallas 1988), *aff'd sub. nom.* ...........................................15

*Mabrey v. Sandstream, Inc.,*
   124 S.W.3d 302 (Tex. App.—Fort Worth 2001, no pet.)...............................................20

*McGowan v. State,*
   938 S.W.2d 732 (Tex. App.—Houston [14th Dist.] 1996), *aff'd sub. nom.* ..........................11

*Miller Paper Co. v. Roberts Paper Co.,*
   901 S.W.2d 593 (Tex. App.—Amarillo 1995, no writ).............................................14, 20

*Molex, Inc, v. Nolen,*
   759 F.2d 474 (5th Cir. 1985) ................................................................................13

*Murco Agency Inc. v. Ryan,*
   800 S.W.2d 600 (Tex. App.—Dallas 1990, no writ) .............................................14

*Numed, Inc. v. McNutt,*
   724 S.W.2d 432 (Tex. App.—Fort Worth 1987, no writ) .......................................14

*Operation Rescue-Nat'l v. Planned Parenthood of Houston and Se. Tex., Inc.,*
   975 S.W.2d 546 (Tex. 1998) ...............................................................................18

*Oxford Global Res., Inc. v. Michelle Weekley-Cessnun,*
   2005 U.S. Dist. LEXIS 1934 (N.D. Tex. February 8, 2005) ...................................19

*Picker International Inc., v. Blanton,*
   756 F.Supp 971 (N.D. Texas 1990) ......................................................................21

*Propath Servs., L.L.P. v. Ameripath, Inc.,*
   2004 U.S. Dist. LEXIS 27846 (N.D. Tex. Oct. 21, 2004) .......................................7

*Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP,*
   302 Fed. Appx. 232, 2008 U.S.App LEXIS 22882 (5th Cir. Nov. 5, 2008) .........13

*Rugen v. Interactive Bus. Sys., Inc.,*
   864 S.W.2d 548 (Tex. App.—Dallas 1993, no writ).......................................13, 20

*Schalk v. State,*
   823 S.W.2d 633 (Tex. Crim. App. 1991) .............................................................15

*SP Midtown, Ltd. v. Urban Storage, L.P.,*
   2008 Tex. App. LEXIS 3364 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet.
   denied) ...............................................................................................................17

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,*
   965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).....................20

*Weed Eater, Inc. v. Dowling,*
   562 S.W.2d 898 (Tex. Civ. App.—Houston [1st Dist] 1978) ...........................19, 20

*Weightman v. State,*
   975 S.W.2d 621 (Tex. Crim. App. 1998) .........................................................11, 15

*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989) ...............................................................................7

*Zoecon Indus. v. Am. Stockman Tag Co.,*
   713 F.2d 1174 (5th Cir. 1983) ...........................................................................8, 21

**STATUTES**

18 U.S.C. §§ 1030(a)(2)(C), (g) ................................................................. 16

18 U.S.C. §§ 1030(a)(5)(B), (g) ................................................................. 16

18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (g) ........................................................ 16

Family and Medical Leave Act ("FMLA") ....................................... 2, 4, 14

TEX. CIV. PRAC. & REM. CODE §§ 134.002, 134.003 ................................ 17

TEX. PENAL CODE § 31.05(a)(4) ................................................................. 17

TEX. PENAL CODE § 31.05(b) ...................................................................... 17

Texas Penal Code Ann. Section 31.05 ...................................................... 15

Texas Penal Code Ann. Section 32.43 ...................................................... 15

## HEIL TRAILER INTERNATIONAL CO.'S APPLICATION FOR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF AND BRIEF IN SUPPORT

In support of its motion for temporary restraining order and preliminary injunctive relief, Plaintiff, Heil Trailer International, Co. ("Heil"), states the following:

## INTRODUCTION AND SUPPORTING FACTS

Heil brings this motion to halt Defendants Gavin Kula ("Kula"), Jerry Davis ("Davis"), Robert Troxell, and William Lyman's ("Lyman") willful and deliberate theft of Heil's trade secrets for the benefit of Heil's direct competitor, Defendant Troxell Company, Inc. ("Troxell"). Heil also seeks to halt Defendants' continued use of Heil's trade secret information to wrongfully compete with Heil by manufacturing and selling directly competitive products utilizing the trade secret information stolen from Heil.

As set forth in Heil's detailed supporting affidavits and complaint, Heil is a global leader in the design and manufacture of sophisticated specialty trailers used in a variety of industries and the military. APP 001 (Affidavit of Jim Sanko, at ¶ 5) As Senior Design Engineers for many years at Heil, Kula and Davis had access to Heil trade secret information, including detailed engineering and design specifications for its specialty trailers that Heil developed over many years at great cost and effort. APP 002, 006-007 (Sanko Aff. at ¶¶ 8, 29-31, 38) Davis and Kula's employment with Heil ended in March 2012 and April 2012, respectively. APP. 009 (Sanko Aff. at ¶ 50) However, Heil has now learned that, while still employed by Heil, Kula acted as a corporate spy for its direct competitor, Troxell, repeatedly funneling to Troxell and its employees Heil's trade secret blueprints and plans for its specialty trailers via e-mail and thumb drive. APP 011-013; APP 020-22 (Affidavit of Ray Hudgins, ¶¶ 6-10, 15-19; Affidavit of Bryan

Yielding, ¶¶ 20-28)  Even more egregiously, Kula performed extensive work for Troxell while still employed by Heil, helping Troxell to utilize the stolen information to design and manufacture competitive products.  APP 012; APP 022 (Hudgins Aff. at ¶ 10; Yielding Aff. at ¶ 32)  And highlighting his extreme perfidy, Kula continued to perform work for Troxell and continued to provide Troxell trade secrets while supposedly on leave from Heil under the Family and Medical Leave Act ("FMLA") after he informed Heil that he was unable to perform any work during his recovery for medical reasons.  APP 007-008; 013; 020-021 (Sanko Aff. at ¶¶ 42, 46; Hudgins Aff. at ¶ 16; Yielding Aff. at ¶¶ 20-27)  Instead, while telling Heil that he was at home recovering from his medical condition and being paid by Heil pursuant to FMLA, Kula was in fact frequently at Troxell helping Troxell to manufacture products based on Heil's stolen plans.  APP 007; 012 (Sanko Aff. at ¶ 42; Hudgins Aff. at ¶¶ 9-10)  Davis likewise assisted Kula and Troxell in obtaining and using Heil trade secret information to directly compete with Heil on behalf of Troxell while still employed by Heil.  APP. 014; 022 (Hudgins Aff. at ¶ 20; Yielding Aff. at ¶¶ 29-32)  Kula and Davis' actions were blatant violations of both their fiduciary duties to Heil and a gross violation of a variety of written Heil confidentiality policies and codes of conduct which Kula and Davis had expressly agreed to honor.  APP 003-006 (*See* Sanko Aff. at ¶¶ 16-28)

The trade secrets at issue include, at a minimum, engineering specifications and design information regarding three specific models of aluminum liquid crude oil trailers (the "Liquid Trailer Plans"), which comprise one of Heil's most prominent and successful business lines in its specialized trailer design and manufacturing business.  APP 018 (Yielding Aff. at ¶ 11) Aluminum liquid crude oil trailers account for approximately 20% of Heil's yearly production of

all Heil products. (*Id.* at ¶ 12) Those three specific models of aluminum liquid crude oil trailers are the 'bread and butter' for Heil's liquid trailer business. (*Id.*)

The Liquid Trailer Plans include technical electronic computer-aided design (CAD) drawings and data for those three specific models, as well as technical drawings demonstrating how sheets of aluminum should be precisely cut and put together in order to create the barrel – which houses the crude oil – for those models. (*Id.* at ¶ 13) These technical drawings can then be used to generate electronic code (at least some of which Kula also took from Heil) to "tell" a machine to cut and otherwise fabricate sheets of aluminum to form the trailer's barrel and other portions of the supporting structures. (*Id.*) These trade secrets are the result of extensive time, resources, and cost invested by Heil (*id.* at ¶ 17), and Heil took substantial measures to protect those trade secrets as detailed further below. APP. 003 (*See* Sanko Aff. at ¶ 13)

Plaintiff has provided the Court with the Declaration of Ray Hudgins, a former Heil employee who worked for a time at Troxell, and returned to Heil after witnessing Defendants' wrongdoing. APP. 011, 014 (*See* Hudgins Aff. at ¶¶ 2-4, 6-25) While at Troxell, Hudgins witnessed first-hand Kula providing Heil trade secret information to Troxell and using that trade secret information for Troxell's benefit (all while Kula was still employed by Heil). APP 012-013 (*See id.* at 10, 17-19) Indeed, Hudgins saw Heil's Liquid Trailer Plans in use with the name Heil clearly designated on the engineering drawings on multiple occasions while working at Troxell, including on Defendant William Lyman's ("Lyman") computer and in use in the Troxell design department. APP.012 (*See* Hudgins Aff. at ¶¶ 12-13) Hudgins also saw Kula programming Troxell's equipment to cut aluminum for the three specific models. (*See* Hudgins Aff. at ¶ 10) Kula would also give Troxell employees various portions of the Liquid Trailer Plans in both paper and electronic form and assist those individuals in programming the

machines to actually manufacture the trailers. (*Id.*) Hudgins also saw Kula plug a thumb drive (an external electronic storage device) into a Troxell computer; that thumb drive contained an electronic version of an engineering barrel drawing designed by another Heil engineer to use that drawing for Troxell's benefit. APP. 013 (*Id.* at ¶ 19)

Hudgins also observed Defendants Robert Troxell's and Lyman's active participation in and encouragement of those wrongful actions. APP. 012-013 (*See id.* at ¶¶ 7, 13-17) Kula performed the work at the behest of Robert Troxell, Troxell's owner and president, and Lyman, a Troxell supervisor, and he worked with both of them on behalf of Troxell to wrongfully compete. APP. 011 (*Id.* at ¶ 7) Robert Troxell would also tell other Troxell employees to have Kula work on various items for Troxell. (*Id.*) Indeed, Kula informed Hudgins (in the presence of Lyman) that Robert Troxell paid Kula by personal check for Kula's work for Troxell while Kula was still employed by Heil. APP. 013 (*See* Hudgins Aff. at ¶ 15) Hudgins also heard Troxell employees, including Lyman, Kula and others, acknowledging that they could get in trouble for having the information from Heil that they were using. APP. 014-015 (*See* Hudgins Aff. at ¶¶ 27-29) Finally, Kula told Hudgins that Robert Troxell was providing Kula with computer equipment for Kula's home so that Kula could perform work for Troxell there (all while Kula was still employed by Heil and while Kula was taking FMLA leave). APP. 013 (*See* Hudgins Aff. at ¶ 16)

Upon learning of Defendants' actions from Hudgins, Heil did an investigation of Kula and Davis' Heil e-mail accounts and found them transmitting or discussing Heil trade secret information with Troxell employees and even third-party manufacturers whom they were communicating with about orders for Troxell all while still employed by Heil. APP. 020-022 (Yielding Aff. at ¶¶ 20-26, 30) Incredibly, Kula was using his Heil e-mail account and computer

to conduct some of his wrongful activity and communicate about the same with Lyman and other Troxell employees. (*Id.* at ¶¶ 20-26) Heil has uncovered numerous e-mail messages from Kula's Heil e-mail account transmitting Heil trade secret information to Troxell employees, including Lyman. (*Id.*) For example, Kula sent from his own Heil email address emails transferring to Troxell employees Heil drawings relating to various portions of the trailers, calibration charts, 'weight drawings,' and electronic data files that are essentially software that enable Troxell to have the electronic drawings be "read" by the machines used to build the trailer and/or trailer parts. APP. 019 (*Id.* at ¶ 19) He even sent, from his own Heil email address to Troxell employees, emails providing Heil internal operating procedures, Heil pricing and purchasing information for parts, and information relating to Heil customers. APP. 019-021 (*See* Yielding Aff. at ¶¶ 19, 23, 25-26) Some of these e-mails attach Heil electronic engineering drawings that have been manipulated to substitute the Heil name and logo with a Troxell name and logo. APP. 021 (*Id.* at ¶ 28) The underlying code in those drawing files confirm that they were, in fact, Heil's drawings. (*Id.*)

Heil faces tremendous and irreparable harm if Defendants' illegal actions are not immediately enjoined. APP. 010 (*See* Sanko Aff. at ¶ 57) Heil has learned that Troxell has already begun manufacturing and selling competitive trailers using the misappropriated trade secrets and attempting to compete directly with Heil using Heil's own secret product specifications. APP. 014, 023 (Hudgins Aff. at ¶¶ 21-23; Yielding Aff. at ¶ 36) Hudgins witnessed Defendants regularly using Heil's trade secret Liquid Trailer Plans to create and sell competitive products while he was at Troxell. APP. 014 (*See* Hudgins Aff. at ¶¶ 21, 23) If Troxell is allowed to continue to use Heil's trade secrets and reap the benefits of its corporate espionage, Heil's goodwill, competitive position and relationships with its customers will all be

irreparably harmed.  APP. 009-010 (*See* Sanko Aff. at ¶¶ 56-57)  Heil's intellectual property is one of the most valuable components of its business, and it is not only at risk from Defendants' theft but could be further harmed if Defendants allow that information to be shared with others. APP. 002, 009-010, 019 (*See* Sanko Aff. at ¶¶ 9, 11, 56-57; Yielding Aff. at ¶¶ 15, 17)  Based on e-mails that have been uncovered, Defendants have already started to share the stolen information with other third parties (such as parts manufacturers).  APP. 20, 22 (Yielding Aff. at ¶¶ 22, 30)

If Troxell is allowed to provide the stolen information to still others, the damage to Heil could increase exponentially.  APP. 010 (*See* Sanko Aff. at ¶¶ 57)  Accordingly, Heil respectfully requests immediate injunctive relief in the form of a temporary restraining order to prevent any further use or disclosure of its trade secret information or wrongful competition utilizing such information pending a preliminary injunction hearing, at which time it will seek a preliminary and permanent injunction and other relief.  Heil also requests that the Court order Defendants to preserve all relevant electronic and documentary evidence, including all electronic devices, and provide an image of such devices to Heil for forensic analysis to determine the full extent of Defendants' wrongdoing.  Finally, Heil seeks expedited discovery pending a preliminary and permanent injunction, damages and other relief against Defendants based on their clear and egregious violations of the law.

## ARGUMENT

### A.    Standards for Injunctive Relief

The elements for obtaining injunctive relief in the Fifth Circuit are well settled.  The moving party must establish:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunctive relief will result in irreparable injury; (3) the

threatened injury outweighs any damage that the injunction may cause the opposing party; and

(4) the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103,

1107 (5th Cir. 1991); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir.

1989); *Equibrand Corp. v. Reinsman Equestrian Prods.*, 2007 U.S. Dist. LEXIS 36229, at *11

(N.D. Tex. May 17, 2007).    The party applying for injunctive relief "is not required to prove that

he will prevail at trial but must establish the right to preserve the status quo pending trial on the

merits by proving all of the four elements."*Propath Servs., L.L.P. v. Ameripath, Inc.*, 2004 U.S.

Dist. LEXIS 27846, at *6 (N.D. Tex. Oct. 21, 2004).    The decision to grant or deny an

application for injunction is within the discretion of the Court and reviewed under an abuse of

discretion standard.    *Lakedreams*, 932 F.2d at 1107; *White v. Carlucci*, 862 F.2d 1209, 1211 (5th

Cir. 1989).

**B.**    **Plaintiff Has a Substantial Likelihood of Success on the Merits**

    **1.**    **Plaintiff Will Likely Succeed on Its Misappropriation of Trade Secrets Claims.**

       Given the extensive evidence of Defendants' blatant theft, Plaintiff is likely to succeed on

its misappropriation of trade secrets claim.    Under Texas law, the elements required to establish

trade secret misappropriation are:    (1) the existence of a trade secret; (2) the trade secret was

acquired through a breach of a confidential relationship or discovered by improper means; (3)

use of the trade secret; and (4) damages. *Gen'l Univ. Sys., Inc., v. HAL, Inc.*, 379 F.3d 131, 149-

50 (5th Cir. 2004).    A trade secret is "any formula, pattern, device or compilation of information,

which is used in one's business and presents an opportunity to obtain an advantage over

competitors who do not know or use it."*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting

*Comp. Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1994)).

Courts analyze six factors to determine whether information is a protected trade secret:(1) whether the information is known outside the business; (2) whether the information is known by the defendant and others involved in the business; (3) measures taken to maintain the secrecy of the information; (4) the value of the information to the party claiming trade secret protection and to its competitors; (5) resources expended developing the information; and (6) how easily the information could be properly acquired through legitimate means. *See Gen'l Univ. Sys.*, 379 F.3d at 150 (citing *In re Bass*, 113 S.W.3d at 739-40). In particular, "items relating to the production of goods such as a machine or formula for the production of an article," including blueprints and drawings, as well as other business information such as customer lists, pricing information, client information, customer preferences and buyer contacts have been shown to be trade secrets. *Am. Derringer v. Bond*, 924 S.W.2d 773, 776-77 (Tex. App.—Waco 1996, no writ); *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (customer lists and compilations were trade secrets based on work to develop them).

Here, Plaintiff's affidavits set forth detailed facts showing that Defendants brazenly and repeatedly misappropriated Heil's blueprints, engineering specifications, machine data files, other design and manufacturing information related to Heil's state-of-the-art liquid trailers and that the stolen information meets all the criteria of a trade secret. First, this information at issue is not generally known to competitors and has been developed by Heil at considerable time, expense and study through years of research and intellectual property development. APP. 019, 002 (Yielding Aff. at ¶¶ 16-17; Sanko Aff. at ¶¶ 8, 11) Heil does not build "cookie-cutter," one-size-fits-all liquid trailers. APP. 002 (Sanko Aff. at ¶ 7) Instead, Heil's engineering group utilizes state-of-the-art design and analysis tools and spends years perfecting designs for each trailer model in order to ensure maximizing performance and efficiency for the function required.

(*Id.*) Heil specially designs and manufactures its liquid trailers to be able to sustain very rough terrain and achieve maximum efficiency, while reducing weight and ensuring safety.   (*Id.*) Companies in the liquid trailer business compete in designing and manufacturing the lightest trailer possible (so that more liquid can be transported in the trailer) while still being able to haul the often-hazardous liquids in a safe, reliable way over various terrain. APP. 016, 023 (Yielding Aff. at ¶¶ 5, 37)   In order to do so, engineers test and use numerous variables – including geometry, production material and assembly methodology – in designing and creating each liquid trailer model. APP. 016 (Yielding Aff. at ¶ 5)   Because the weight of the different liquids carried differ, each model of liquid trailer is custom-engineered for the liquid or cargo that it will be hauling. (*See id.*)   Not surprisingly, designing each model of liquid trailer therefore requires a significant amount of specialized engineering, cost and time. APP. 002 (Sanko Aff. at ¶ 8)   Heil has both purchased intellectual property and developed intellectual property through years of research and development in order to design its liquid trailers for manufacture. (*Id.*)   Heil also trains and employs experienced engineers at a high employment cost, as well as very expensive engineering equipment (including engineering computer programs) for those engineers to use in designing the trailers. APP. 002, 006 (*Id.* at ¶¶ 8, 33)   Indeed, neither Davis nor Kula had designed tank trailers before coming to Heil but learned Heil's processes during their employment at Heil. APP. 018, 006 (Yielding Aff. at ¶ 10; Sanko Aff. at ¶ 33)   In short, Heil's trade secret blueprints and design information are the very lifeblood of the company and provide it with the competitive advantage that enables it to be considered the top-tier manufacturer of speciality trailers used in the transport of dangerous materials. APP. 002; 016 (*See* Sanko Aff. at ¶¶ 8-10; Yielding Aff. at ¶ 5)

Second, Heil's designs are not generally known outside the company, and Heil takes varied and extensive security measures in order to protect its trade secret information. APP. 002-006; 017, 019 (*See* Sanko Aff. at ¶¶ 11-28; Yielding Aff. at ¶¶ 6-7; 16)  For example, at Heil's Rhome, Texas facility (the site of the theft at issue), there are locks on the outside doors, and employees have identification cards embedded with computer chips that are necessary to gain access to the facility. APP. 003 (Sanko Aff. at ¶ 14)  Additionally, all employees are provided with a specific user identification name and password for logging on to Heil computers at the facility. (*Id.*)  Heil's electronic engineering proprietary and trade secret information is specially housed on its engineering servers, and Heil's employees are provided access to different trade secret information depending on that employee's position. APP. 017, 003 (Yielding Aff. at ¶ 6; Sanko Aff. at ¶ 15)  Due to their job requirements, engineers are provided with more extensive access privilege, including computer access to Heil's engineering drawings/plans for its trailers. APP. 003 (Sanko Aff. at ¶ 15)  Heil's standard protocol strictly prohibits dissemination of any Heil drawings to third parties without the consent of senior engineering leadership, and even in such cases, such disclosure must further Heil's business interests. APP. 017 (Yielding Aff. at ¶ 7)  Instead, in order to market and sell its product to customers, it provides a simplified sketch known as a 'weight drawing' or 'approval drawings' (collectively "weight drawings") to give its customers an idea of what their trailer may look like or to indicate customer acceptance. (*Id.*)However, a 'weight drawing' does not provide any information regarding the methodology or specifics—such as geometry, material composition, and assembly instruction—for the trailer. (*Id.*)  Moreover, even 'weight drawings' are secured, protected, and not publicly available. (*Id.* at ¶ 8)  If a customer is given a 'weight drawing,' only he or she will receive a copy of that 'weight drawing' and that drawing will be of the customer's own specific proposed trailer, not

another customer's trailer. (*Id.*) Every one of Heil's drawings, even the "weight drawings," contains both a prominent Heil logo (that includes the word "Heil") as well as a notification of its confidentiality. (*Id.* at ¶ 9) Moreover, for years, Heil's engineers and other employees, including Kula and Davis, have been required to agree to a code of business ethics ("Heil Business Code"), an information technology user access policy ("IT Policy") and a remote access policy ("Remote Access Policy"), which prohibit the misuse or disclosure of Heil's confidential information and trade secrets as well as abuse of Heil's IT systems. APP. 003-004, 006 (Sanko Aff. at ¶¶ 16, 18, 27) Defendants Kula and Davis were very aware of these confidentiality policies, and, after affirming their agreement in writing, went on to violate them in flagrant fashion. APP. 006 (Sanko Aff. at ¶¶ 34-35) These extensive steps taken by Heil to protect its information have been recognized as being more than adequate to establish trade secret status under Texas law. *McGowan v. State*, 938 S.W.2d 732, 737 (Tex. App.—Houston [14th Dist.] 1996), *aff'd sub. nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998); *see also Weightman*, 975 S.W. 2d at 625-29.

    Heil also has submitted extensive sworn evidence establishing the other elements of its misappropriation of trade secrets claim, including that Defendants acquired Heil's trade secrets through a breach of a confidential relationship, use of the trade secrets and damages. First, as signatories to Heil's confidentiality policies and as trusted Heil engineers with access to some of Heil's most valuable trade secret information and computer programs, Kula and Davis were clearly in a confidential relationship which precluded them from sharing that information with competitors or using it to wrongfully compete with Heil. APP. 006-007 (Sanko Aff. at ¶¶ 34, 38) Indeed, Kula and Davis even took a "Recognizing Conflicts of Interest Course" and a "Heil Intellectual Property Training Course" while at Heil and were fully aware that competing with

the company while still employed was wrongful and prohibited by Heil's policies. (*Id.* at ¶¶ 35-37)

Nevertheless, based on the inducement and financial compensation provided by Robert Troxell, Sonny Lyman and Troxell Company, Kula and Davis began competing with Heil while still employed by and being paid by Heil, causing both extensive damage and irreparable harm to Heil and threatening the livelihoods of the 200-plus workers employed by Heil in Texas as well as entire lines of Heil's business. APP. 001, 002, 010, 013, 022 (*See id.* at ¶¶ 6, 11, 57; Hudgins Aff. at ¶¶ 15-16; Yielding Aff. at ¶ 32) As noted above, former Troxell employee Ray Hudgins witnessed first-hand Defendants' theft and misuse of Heil's trade secrets while working at Troxell. (*See generally* Hudgins Aff.) Mr. Hudgins, who worked at the Troxell facility from late November until he recently returned to Heil, testifies that throughout his employment Defendants were blatantly using Heil's blueprints, drawings and other design information in his presence to manufacture competitive products, including the three lines of specialty liquid trailers produced by Heil. (*Id.*)

Improper means of acquiring another's trade secrets includes inducement of or knowing participation in a breach of confidence and other means either wrongful in themselves or wrongful under the circumstances of the case. *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex. App.—Fort Worth 2007, pet. denied). Even if Defendants could have acquired some of this information by lawful means, which they could not and did not, "the fact that information is discoverable by lawful means does not deprive its owner of protection from one acquiring it by unfair means."*Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 858 (Tex. App.—Fort Worth 2004, no pet (citing *Gonzales v. Zamora*, 791 S.W.2d 258, 264-65 (Tex. App.—Corpus Christi 1990, no writ). Further, it is well established that "a former employee

may not use confidential information or trade secrets the employee learned in the course of his

employment for his own advantage and to the detriment of his employer." *Id.* (citing *Rugen v.*

*Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ)). Here, it is

clear that Troxell could not have acquired Heil's trade secret designs by legitimate means, or else

it would have had no need to steal such designs using Heil employees as corporate spies.

In sum, Heil's blueprint and design information related to its specialty liquid trailers was

quintessential trade secret information -- incredibly valuable competitive information, developed

at extensive cost and effort, not available to competitors in the marketplace and kept secret by

Heil through extensive measures.  APP. 002-006, 017 (Sanko Aff. at ¶¶ 8-28, 56; Yielding Aff.

at ¶¶ 6-9)  Moreover, while plaintiffs in trade secret cases sometimes suspect, but have difficulty

confirming, that defendants have stolen and are using their information, here that is anything but

the case.  Plaintiff has an eyewitness to Defendants' blatant theft and misuse of the trade secrets

to wrongfully compete and steal business.  Furthermore, Plaintiff also has been able to uncover

extensive electronic evidence showing Defendants' disregard of their confidentiality obligations

and provision of trade secrets while working for Heil.  Defendants have already caused extensive

damage to Heil and threaten further irreparable harm if not immediately halted from their illegal

activities.

2.   **Plaintiff Has a Likelihood of Success on Its Breach of Fiduciary Duty Claims.**

Under Texas law, as an agent of the employer, an employee has a duty to act primarily

for the benefit of the employer in matters connected with his agency.  *Ray Mart Inc. v. Stock*

*Bldg. Supply of Tex. LP,* 302 Fed. Appx. 232, 2008 U.S.App LEXIS 22882, at * 17-18 (5th Cir.

Nov. 5, 2008) (applying Texas law).  It is a breach of fiduciary duty to one's employer to

perform work for a competing company while still employed.  *Molex, Inc, v. Nolen*, 759 F.2d

474, 475-76 (5th Cir. 1985). Likewise, an employee's fiduciary duty forbids the employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer **both during and after** employment. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.—Amarillo 1995, no writ); *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex. App.—Fort Worth 1987, no writ). *See also Murco Agency Inc. v. Ryan*, 800 S.W.2d 600, 605 (Tex. App.—Dallas 1990, no writ) (use of customer lists was breach of duty); *Zamora*, 791 S.W.2d at 266 (breach of fiduciary duty to use innovative system for processing medical claims information stolen from employer).

Here, as Senior Engineers and employees at Heil, Kula and Davis were undoubtedly fiduciaries under Texas law in a confidential relationship with Heil.  This confidential relationship was also expressly agreed to in writing by Kula and Davis as shown by the numerous company policies stressing confidentiality and prohibiting conflicts of interest and wrongful competition and misuse of Heil's IT, which they affirmed.  By sending trade secrets via e-mail and working with Troxell to utilize those trade secrets while employed by and paid by Heil, Kula and Davis engaged in the most egregious breaches of their fiduciary duties.  In particular, Kula's misrepresentations about his FMLA leave and efforts to keep access to Heil's information and receive pay from Heil, all while secretly working for and being paid by Troxell, are gross violations of his duties and the law.

Troxell and its employees who induced and participated in this breach are also liable.  To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *Floyd v. Hefner*, 556 F. Supp. 2d 617, 655 (S.D.Tex. 2008).  Here, there

is no doubt that Defendants were aware that Kula and Davis were still working at Heil, were

fiduciaries of Heil, and were wrongfully assisting them in competing and utilizing trade secrets.

First, Kula and Davis were communicating with Troxell employees or affiliated third parties

about competing and sending trades secrets **from their Heil e-mail accounts**.  APP. 019-023,

013 (*See, e.g.,* Yielding Aff. at ¶¶ 19-32; Hudgins Aff. at ¶ 17)  Moreover, Mr. Hudgins was

informed by Kula that Robert Troxell was paying him by check for his actions while still

employed by Heil.  APP. 013 (Hudgins Aff. at ¶ 15)  Finally, Hudgins also testified that Troxell

employees acknowledged the wrongful nature of their actions and the risk if they got caught in

discussions at Troxell.  APP. 014 (*Id.* at ¶¶ 27-28)  Lyman and Kula did too.  APP. 015 (*Id.* at

29)

Indeed, the actions of at least Kula far exceed a typical breach of fiduciary duty and rise

to the level of criminal conduct, including Commercial Bribery under the Texas Penal Code Ann.

Section 32.43.  Section 32.43 provides that a person who is a fiduciary (which is defined to

include employees) commits an offense if he confers, accepts or agrees to accept any benefit

from another person or organization understanding that the benefit will influence the conduct of

the fiduciary in relation to the affairs of his beneficiary.  At least Robert Troxell and Kula have

engaged in Commercial Bribery based on Kula's statements that Troxell paid him for his work

for Troxell, which included his use of Heil's trade secrets, and provided him with computer

equipment, both while Troxell was aware that he was still employed by Heil.  Likewise, the theft

of trade secrets as described above meets all the criteria to establish a Felony of the Third Degree

under Texas Penal Code Ann. Section 31.05.  *See Leonard v. State*, 767 S.W.2d 171, 175 (Tex.

App.—Dallas 1988), *aff'd sub. nom.  Schalk v. State,* 823 S.W.2d 633 (Tex. Crim. App. 1991);

*Weightman,* 975 S.W.2d  at 624.

3.      **Plaintiff Has a Likelihood to Prevail on Its CFAA and TTLA Claims.**

Heil also has a substantial likelihood of success on the merits of its Federal Computer Fraud Act ("CFAA") and Texas Theft Liability Act ("TTLA") claims.  With respect to its CFAA claim, injunctive relief is specifically provided for in the CFAA, and a private cause of action can be brought against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer."  18 U.S.C. §§ 1030(a)(2)(C), (g).   Additionally, the CFAA provides for a private right of action against anyone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage."  18 U.S.C. §§ 1030(a)(5)(B), (g).  A private civil action may be brought if the conduct involves "loss to 1 or more persons during any 1-year period...aggregating at least $5,000 in value."  18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (g).  *See also Barnstormers, Inc. v. Wing Walkers, LLC*, No. EP-10-CV-261-KC, 2011 U.S. Dist. LEXIS 47143, at *26-27 (W.D.Tex. May 3, 2011), *citing Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006).

As set forth at length in the Affidavit of Bryan Yielding, e-mails recovered from Kula's and Davis' Heil e-mail accounts demonstrate that both of them intentionally accessed their Heil computers and Heil's computer system to obtain Heil's confidential information in order to provide it to Troxell and/or assist Troxell in competing against Heil. APP. 019-022; 014(*See* Yielding Aff. at ¶¶ 18-30; *see also* Hudgins Aff. at ¶ 20)   Obtaining such confidential information in the manner in which they did, and for the benefit of Troxell, exceeded Kula's and Davis' authorized access to use Heil's computers and computer system (and/or was without authorization and recklessly caused damage).  Both Kula's and Davis' actions involve loss to Heil, during a one-year period, aggregating at least $5,000 in value.  Heil's base price for a basic

version of just one of the trailers is in excess of $50,000, and, as of April 2012, Troxell was apparently manufacturing about seven to eight trailers each week. APP. 014, 023, 010 (Hudgins Aff. at ¶ 22; Yielding Aff. at ¶ 35; *see also* Sanko Aff. at ¶ 56 (discussing recent purchase of Heil, including Heil's intellectual property, for over $200 million)

Next, with respect to its TTLA claim, the elements of a TTLA violation are: (1) without the trade secret owner's effective consent, (2) the defendant knowingly stole a trade secret, made a copy of an article representing a trade secret, or communicated or transmitted a trade secret. *See SP Midtown, Ltd. v. Urban Storage, L.P.*, 2008 Tex. App. LEXIS 3364, at *21-22 n.8 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied); TEX. CIV. PRAC. & REM. CODE §§ 134.002, 134.003; TEX. PENAL CODE § 31.05(b).  Here, as set forth above, Defendants knowingly stole multiple trade secrets and communicated or transmitted multiple trade secrets without Heil's effective consent. *Id*; *see also* TEX. PENAL CODE § 31.05(a)(4) (defining trade secret).

4.   **Plaintiff Has a Likelihood of Success on Its Conspiracy Claims.**

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are:

(1)   Two or more persons;

(2)   An object to be accomplished;

(3)   A meeting of minds on the object or course of action;

(4)   One or more unlawful, overt acts; and

(5)   Damages as the proximate result.

*Operation Rescue-Nat'l v. Planned Parenthood of Houston and Se. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998). "In addition, civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 384 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996). There is no independent liability for civil conspiracy. *Central Sav. and Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 244 (Tex. App.—Dallas 1992, no writ).   Rather, "the defendant's liability depends on its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable."*Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex.App.—Houston [14th Dist.] 2001, pet. denied).

The agreement may be tacit; a formal understanding is not required.  *Bourland v. State*, 528 S.W.2d 350, 354 (Tex. Civ. App.—Austin 1975, writ ref. n.r.e.).  Inferences of the intent required in a concerted action may be drawn by joint participation in the transactions and from enjoyment of the fruits of the transaction on the part of the defendants.   *Essex Crane Rental Corp. v. Carter*, 2012 Tex. App. LEXIS 2512, at *29 (Tex. App. Houston 1st Dist. Mar. 29, 2012, no pet.).

Here, as set forth above and in the attached exhibits, Plaintiff has submitted extensive evidence supporting its conspiracy claims, including individual overt acts by each of the individual defendants.   These include e-mails among and between certain Defendants showing their agreement to misappropriate and use Heil's trade secrets to manufacture competing products, as well as to have Davis and Kula breach their fiduciary duties by assisting Troxell while being paid by Heil.   Moreover, there is also Hudgins' testimony about Kula's admission

that he was paid by Robert Troxell to perform work for Troxell, including advising Troxell on how to utilize Heil's trade secrets while employed by Heil.

## C.    <u>Plaintiff Will Be Irreparably Injured Without Relief</u>

Defendants' ongoing theft and misuse of Heil's trade secrets and breaches of fiduciary duty have caused irreparable harm to Plaintiff's business and will continue to do so unless immediately enjoined.   The purpose of this preliminary injunction proceeding is to prevent irreparable harm that will occur before a full trial on the merits can be conducted. *Tropical Warehouses, Inc.,* 121 S.W.3d at 857 (citing *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002)).   While injunctive relief is something that should ordinarily be used sparingly, the use of a preliminary injunction to restrict behavior that is likely to result in the unauthorized use or disclosure of trade secrets is encouraged by the Texas Supreme Court. *Chapa v. Garcia*, 848 S.W.2d 667, 670 (Tex. 1992) ("At a time of rapid technological change, genuine trade secrets certainly deserve the continued protection that our Texas courts have traditionally afforded.").

When a defendant possesses trade secrets and is in a position to use them, *<u>harm to the trade secret owner may be presumed</u>. IAC, Ltd. v. Bell Helicopter Textron, Inc.,* 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.) (emphasis added) (citing *Tropical Warehouses, Inc.,* 121 S.W.2d at 857).   The loss of confidential business information by dissemination by ex-employees is a particularly acute injury not susceptible to purely financial compensation. *See Oxford Global Res., Inc. v. Michelle Weekley-Cessnun,* 2005 U.S. Dist. LEXIS 1934, at *9-10 (N.D. Tex. February 8, 2005).

The protection of trade secrets through common law is a well-recognized principle with legions of cases behind it. "It is well established that, in addition to damages, injunctive relief may be granted to the owner of a trade secret." *Weed Eater, Inc. v. Dowling,* 562 S.W.2d 898,

902 (Tex. Civ. App.—Houston [1st Dist] 1978); *Mabrey v. Sandstream, Inc.*, 124 S.W.3d 302, 310 (Tex. App.—Fort Worth 2001, no pet.); *see also K&G Tool & Serv. Co. v. G&G Fishing Tool Service*, 314 S.W.2d 782, 789 (Tex. 1958) (stating protection of trade secrets is well-recognized objective of equity and injunctive relief); *Rugen*, 864 S.W.2d at 551 (finding the noncompete agreement at issue unenforceable, but enjoining the defendant from contacting the plaintiff's customers was "necessary to protect IBS's confidential information.").

Texas courts have also recognized that where a prospective activity by a defendant will, by its very nature, create a high probability of undetectable and unauthorized use or disclosure, it is appropriate to restrain that activity. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, at *24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *Rugen*, 864 S.W.2d at 551; *Conley v. DSC Comms. Corp.*, 1999 Tex. App. LEXIS 1321 at *8-10 (Tex. App.—Dallas Feb. 24, 1999, no writ); *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 902 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *FMC Corp. v. Varco International, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982). It is certainly appropriate to do so in the context of a ***preliminary injunction*** until a full trial on the merits can be held to determine whether that activity would, in fact, create the irreparable harm it threatens. Otherwise, Plaintiff's ability to get meaningful relief at trial is destroyed.

Finally, courts routinely find that loss of trade secrets results in irreparable harm to the victim warranting injunctive relief. *See K&G Oil Tool & Serv. Co.*, 314 S.W.2d at 791 (holding "irreparable injury shown by inability of plaintiff to determine how much lost sales and revenue would result from improper use of trade secret"); *T-N-T Motorsports, Inc.*, 965 S.W.2d at 24 (holding where plaintiff testified loss of goodwill from improper use of trade secrets pending trial would be "immeasureable," legal remedy was inadequate); *Miller Paper Co.*, 901 S.W.2d at

602 (court free to credit testimony of plaintiff that "we can kind of put our hands on what is happening to us now, but we have no way of assessing the damage that this is going to cause"). *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996); *Picker International Inc., v. Blanton*, 756 F.Supp 971, 980-81 (N.D. Texas 1990) (injunctive relief appropriate where there has been breach of confidential employment relationship, breach of confidentiality agreements and theft of trade secrets).

Heil faces a tremendous ongoing threat to its goodwill, competitive position and loss of business if Defendants are allowed to continue to use Heil's stolen trade secret designs to manufacture and sell competitive products or disclose Heil's information to still other parties. The damage from this theft is potentially so far-reaching that it will be difficult if not impossible to calculate the full extent of Heil's damage.  Even if some of the damages from lost sales might be calculable, injunctive relief is also appropriate to prevent future harm, disclosure and misuse. *Zoecon Indus.*, 713 F.2d at 1176 (upholding grant of permanent injunctive relief as well as damage award).

**D.**     **The Threatened and Likely Injury to Heil Outweighs Any Potential Injury to Defendants**

Heil's potential injury, including possible loss of entire lines of business and some of its most valuable intellectual property, outweighs any harm from the proposed injunction issuing to Defendants.  Indeed, the injunction merely seeks to have Defendants preserve and turnover evidence, cease using or disclosing Heil's trade secret information, and cease manufacturing or selling any products that use or incorporate Heil's trade secret information in any way.  In short, it would not stop Troxell from fairly competing by manufacturing trailers and parts based solely on its own information, but rather would merely prohibit it from using and benefiting from any information stolen from Heil.

**E.      Injunctive Relief Will Serve the Public Interest**

There is no doubt that injunctive relief will serve the public interest.  Here, Defendants have engaged in extensive criminal as well as civil violations and the public has a strong interest in protecting companies from loss of business due to theft of trade secrets and commercial bribery.  Likewise, the public has a strong interest in preventing breaches of confidentiality policies and agreements and breaches of fiduciary duties by employees.

## CONCLUSION

For these reasons, Heil Trailer International, Co. respectfully requests that the Court grant its Motion for Temporary Restraining Order and Preliminary Injunctive Relief as follows:

Enjoining and restraining Defendants Gavin Kula, Jerry Davis, Robert Troxell, William Lyman, Troxell Company, Inc., and Troxell's owners, officers, agents, servants, employees and attorneys, and other persons who are in active concert or participation with any of them (such as its owners, distributors, suppliers, and manufacturers with notice of the order), as follows:

(a) from removing, destroying, concealing, altering, or otherwise disposing of any documents or electronic evidence, computers or data storage devices in their possession, custody or control that relate in any way to claims set forth in Plaintiff's Complaint;

(b) from removing, destroying, concealing, altering, or otherwise disposing of any confidential, proprietary or trade secret information of Heil, including but not limited to:  (1) Heil, product and engineering specifications and information, software and products, trade secrets, data, future product development plans and specifications, including any such information that has been altered by Defendants to appear to be Troxell information; (2) employee, customer (both current and known prospective) and supplier lists and information (including the contact information for those customer and suppliers (both current and known prospective); customer-specific needs in the niche market in which Heil operates, and any information about any of them as such information relates to that customer or supplier's relationship with Heil and/or use or supply of its products); (3) Heil's current and future marketing plans, pricing strategies, and competitive positioning; (4) Heil's consultant, advisor, and/or collaborator lists, including contact information and any information about any of them as such information relates to that consultant, advisor and/or collaborator's relationship with Heil

and/or role in the development of its products; and (5) Heil's unpublished financial information, financial forecasts, budgets, costs, and capital requirements (collectively, "Heil Confidential Information and Trade Secrets") during the pendency of this suit;

(c)      from disclosing, reproducing, distributing, or using any Heil Confidential Information and Trade Secrets and prohibiting Defendants from diirectly or indirectly, manufacturing, producing, transporting, exporting, importing, offering for sale, selling, transferring, conveying ownership, distributing, advertising, marketing, promoting or displaying, anywhere in the world any aluminum crude oil trailers or any other products or information that have used or will incorporate or use Heil's Confidential Information and Trade Secrets in any manner, including any products that were manufactured or designed by Defendants in any part using Heil's Confidential Information and Trade Secrets;

(d)      that within 48 hours of receipt of this Order, Defendants will deliver by Federal Express or other trackable, overnight carrier any and all computers and data storage devices and media, including without limitation, laptop computers, desktop computers, CD-ROMs, DVDs, floppy disks, hard disk drives, "zip" drives and flash memory devices (such as Compact Flash and USB memory keys), that were used at any time to access, store, copy or alter any Heil Confidential Information and Trade Secrets, including any devices on which e-mails containing or attaching Heil Confidential Information and Trade Secrets were reviewed or accessed by Defendants, to Plaintiff's attorneys, who will provide such information to a computer forensic examiner for imaging.

(e) imposing a constructive trust against the property and assets of Troxell relating to products and parts manufactured using Heil's Confidential and Trade Secret Information, as well as against the profits Troxell obtained in selling any products or parts manufactured by using Heil's trade secrets.

Dated: June 11, 2012                    Respectfully submitted,

                                        By:/s/ Jeremy W. Hawpe

                                        Terrence J. Sheahan *(pro hac vice motion pending)*
                                        James W. Witz *(pro hac vice motion pending)*
                                        Michael S. Mayer *(pro hac vice motion pending)*
                                        FREEBORN & PETERS LLP
                                        311 South Wacker, Suite 3000
                                        Chicago, Illinois 60606
                                        Ph: (312) 360-6000
                                        Fax: (312) 360-6575

                                        -and-

                                        Jeremy W. Hawpe
                                        State Bar No. 24046041
                                        LITTLER MENDELSON, P.C.
                                        2001 Ross Avenue, Suite 1500
                                        Dallas, Texas 75201
                                        Ph:  (214) 880-8100
                                        Fax: (214) 880-0181

                                        ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served along with Plaintiff's Complaint via process server to the following:

Troxell Company Inc.                    Gavin Kula
c/o Mr. Robert Troxell                  124 Carnes Court
5940 E. Hwy. 114                        Springtown, TX 76082
Rhome, TX 76078

Mr. Robert Troxell                      Jerry Davis
Troxell Company Inc.                    5436 Canyon Lands Dr.
5940 E. Hwy. 114                        Ft Worth, TX   76137
Rhome, TX 76078

                                        Willliam Lyman
                                        7105 Oak Park Drive
                                        Richland Hills, TX 76118

                                        */s/ Jeremy W. Hawpe*

Firmwide:112294159.3 071724.1001

HEIL TRAILER INTERNATIONAL CO.'S APPLICATION FOR EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF
AND BRIEF IN SUPPORT